

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HUNTER INNOVATIONS COMPANY, )
    Plaintiff, )
)
v. )
) Case No. 1:10cv832
THE TRAVELERS INDEMNITY )
COMPANY OF CONNECTICUT, et al., )
    Defendants. )

## MEMORANDUM OPINION

At issue in this diversity action is whether plaintiff's claim for breach of contract is barred by the statute of limitations. Ordinarily, a federal court in Virginia must apply Virginia's statute of limitations to state law claims in diversity actions. Yet, pursuant to Virginia's "borrowing statute,"[1] a breach-of-contract claim is governed by the statute of limitations of another state if that state's law governs the contract and its statute of limitations is more restrictive than Virginia's. For the reasons that follow, this case fits squarely within Virginia's borrowing statute; District of Columbia law governs the contract at issue, and because the District of Columbia applies a more restrictive three-year statute of limitations to breach-of-contract claims, plaintiff's claim is barred.

I.[2]

---

[1] See Va. Code § 8.01-247 (West 2010).

[2] The facts stated herein are derived from the pleadings and the declarations attached to the parties' briefs. Because matters outside the pleadings are considered, namely the parties' declarations, the motion to dismiss is converted into one for summary judgment. See Fed. R. Civ. P. 12(d). Conversion is permissible because both sides were put on notice of the potential conversion by the October 13, 2010 Order requesting affidavits regarding the statute of limitations issue, and both sides had ample opportunity to present pertinent materials. See *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998); *Robishaw Eng'g Inc. v. United States*, 891 F. Supp. 1134, 1137 n.2 (E.D. Va. 1995).

Plaintiff, Hunter Innovations Company ("HIC"), is a Virginia sole proprietorship that specializes in restoring, repairing, and refurbishing historical real property. HIC is owned by James Hunter. Defendant, The Travelers Indemnity Company of Connecticut ("Travelers"), is a nationwide insurance company with its principal place of business in Hartford, Connecticut.

Travelers provided insurance coverage for certain historical real property located in northwest Washington, D.C. ("insured property"). The insured property was damaged by lightning on August 17, 2003. Thereafter, HIC submitted a written proposal to repair the insured property for $85,209. A property claim representative for Travelers, Stephen Brady, called Hunter on December 12, 2003 to discuss HIC's proposal. Brady placed the call from his office in Maryland and Hunter received the call at HIC's office in Virginia. During the course of the phone conversation, Travelers rejected HIC's original bid, but it offered HIC a time-and-materials contract to restore the insured property. HIC accepted the contract over the telephone.

Later that day, Brady sent a letter by facsimile to HIC's office in Arlington, confirming the material terms of the contract. Hunter states that he did not consider the contract to be "complete and binding" until he received the letter. Indeed, Hunter claims that "[h]ad Brady not delivered the terms of the agreement to me in writing, HIC would not have undertaken any work." The letter listed the date of the contract, the parties, and the owner of the insured property. It also stated the subject matter of the contract (*i.e.*, repairs), and confirmed that HIC would be paid for its repair work on a time and materials basis, as follows:

> In follow-up to our recent telephone conversation regarding the above mentioned repairs, thank you very much for your time and cooperation. We have agreed to approach this loss on a time and material basis. You will be able to document your project costs through time and material to me for justification of the claim. We will then pay 10% profit and 15% overhead on your total time and material costs.

The letter further stated that "[a]t this time, we have advance [sic] $15,000 to the insured in order to get the project going." Finally, at the end of the letter, Brady noted that "[t]he insured is very pleased that you will be the contractor doing the repairs and is anxious to get the repairs started."

After receiving the confirmation letter, HIC began repairing the insured property. On March 7, 2004, HIC informed Travelers and Brady that the costs of repair had already exceeded $100,000. Shortly thereafter, on March 25, 2004, HIC submitted a list of work still needed to finish the project, and it itemized the total cost of completion as $320,000. HIC alleges that, after receiving the cost estimate, Brady and Travelers repeatedly represented to HIC that HIC would be paid its costs in accordance with the terms of the contract. Thereafter, it appears that HIC completed the work and submitted a final statement of costs to Travelers in September 2004, and again in December 2004. The final statement listed the total cost of completing the repairs as $318,555.12, and provided that, after adding overhead and profits and subtracting three advance payments, Travelers still owed HIC a total of $303,193.88 for the contracted work. The evidence in the record does not identify the exact date the repairs were completed, but the complaint does allege that HIC completed the repairs within one year of accepting the contract.

Brady sent HIC a letter on December 14, 2004, stating that Travelers could not make final payment until it received further documentation. The letter also requested that Hunter meet with Michael Shilling ("Shilling") of Meyers Construction Co., Inc. ("Meyers Construction") at the job site to show Shilling the materials that were used by HIC in contemplating performance. Accordingly, Hunter met Shilling on February 1, 2005 and, on that occasion, Hunter showed Shilling a few of the materials used to complete the repair work. During their meeting, Shilling advised Hunter that he was a consultant for Travelers, but Shilling never stated that he was preparing a report that would affect the final payment from Travelers to HIC.

In June 2005, Hunter obtained a copy of a letter sent from Brady to the owners of the insured property. While the letter was dated April 18, 2005, and Hunter was copied on the letter, he did not receive the letter until months later because it was mailed to the wrong address. Hunter claims that he only received a copy of the letter after Brady referenced it during a telephone conversation, which prompted Hunter to request a copy. Notwithstanding HIC's final statement of costs, the letter claimed that the total cost of completion was only $210,214.21. After subtracting the amount of advances paid to HIC from the total cost of completion, the letter further stated that a "final check" in the amount of $114,214.21 would issue under separate cover. On June 22, 2005, approximately seven to ten days after Hunter received Brady's letter, Travelers issued the "final check," which HIC deposited. After depositing the check, HIC alleges that Travelers still owed $189,193.88.

Hunter claims that from the date the contract was formed, December 12, 2003, until the date he received the "final check," June 22, 2005, he was not aware that Travelers did not intend to pay the full amount owed. During multiple in-person and telephone conversations, Brady allegedly told Hunter: "[W]e're a responsible company, you're going to be paid." Even after Travelers issued the final check, Hunter alleges that he still believed that Travelers would eventually pay the full amount owed because Brady told him that if HIC "could provide additional information or documentation to [Brady] or Shilling, it would be taken under consideration at that time."

From June 2005 to July 2008, Hunter alleges that he had numerous telephone conversations with Brady and Brady's supervisor, Steve Maloney, concerning the final payment for restoring the insured property. During each phone call, "Travelers and its representatives would tell [Hunter] that the file did not reflect HIC's justification as to documentation for time

- 4 -

and material." Travelers would then ask Hunter "to send in written justification." Hunter claims that he sent the requested "written justification" on numerous occasions, but the final payment was never made.

After repeated attempts to obtain final payment from Travelers, HIC filed suit in federal court in the District of Columbia on April 18, 2008, asserting claims for breach of contract, *quantum meruit*, unjust enrichment, and fraud. The case was eventually dismissed without prejudice, on March 31, 2009, because HIC had not registered its trade name in the District of Columbia. *See Hunter Innovations Co. v. The Travelers Indem. Co. of Conn.*, 605 F. Supp. 2d 170, 173-75 (D.D.C. 2009).

On July 16, 2008, Travelers sent HIC a letter stating that it would not pay the remaining amount allegedly owed pursuant to the terms of the contract. Hunter claims that the letter was the first time he was made aware that Travelers did not intend to pay the full amount owed under the contract. Specifically, Hunter states that "[b]efore July 16, 2008, neither Travelers nor co-defendant Stephen Brady had ever indicated to me . . . that Travelers would not pay HIC the full amount owed under the contract."

HIC initiated the instant action on July 27, 2010. The allegations in the complaint mirror the allegations previously made in the suit filed in the District of Columbia. Specifically, HIC initially asserted claims for breach of contract, *quantum meruit*, unjust enrichment, and fraud against Travelers, and it asserted a claim for fraud against Brady. During the course of the litigation, HIC voluntarily dismissed the fraud claim against Brady, and it also voluntarily dismissed the claims against Travelers for *quantum meruit*, unjust enrichment, and fraud. Travelers then moved to dismiss the breach-of-contract claim on the ground that it is barred by the statute of limitations.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless he or she adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

## III.

The statute of limitations analysis properly begins with the threshold choice of law issue. In a diversity action such as this one, federal courts must apply the choice of law rules of the forum state. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Virginia, it is well-settled that the limitations period is treated as a procedural issue governed by Virginia law. *See Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 571 (Va. 2003); *Hospelhorn v. Corbin*, 19 S.E.2d 72, 73 (Va. 1942). And, the Virginia law governing the limitations period for breach-of-contract claims includes two statutes pertinent here. First, Virginia Code § 8.01-246(2) provides that the statute of limitations for a breach-of-contract claim is five years for a written contract. *See* Va. Code § 8.01-246(2) (West 2010).[3] But this is not the end of the matter, as Virginia has enacted a "borrowing statute" that "limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's."

---

[3] The parties do not dispute that Virginia's five-year limitations period governing written contracts applies to the breach-of-contract claim in this case.

*Hansen*, 585 S.E. 2d at 572 (citing Va. Code § 8.01-247).[4] For the purposes of the borrowing statute, "[t]he law governing a contract is the law relating to the validity and interpretation of the contract itself, rather than the law regarding performance and breach." *Fiberlink Commc'ns Corp. v. Magarity*, 24 F.App'x 178, 2001 WL 1658914, at *3 (4th Cir. Oct. 16, 2001). Thus, whether Virginia's five-year statute of limitations applies to the instant action, or whether another jurisdiction's more restrictive limitations period governs this case pursuant to the borrowing statute, depends on what law governs the contract.

Under well-established Virginia choice-of-law rules, the nature, validity, and interpretation of a contract is governed by "the law of the place where made." *Lexie v. State Farm Mut. Auto Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996); *CIT Corp. v. Guy*, 195 S.E. 659, 661 (Va. 1938). And, in Virginia, a contract is "made" at the place "where the final act is done which is necessary to make the contract binding." *Chesapeake Supply & Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1417 (E.D. Va. 1988) (quoting 4A Michie's Juris., *Conflict of Laws* § 20, at 92). HIC argues that the contract at issue in this case was made in Virginia because Hunter orally agreed to the time-and-materials contract from Virginia, and the letter confirming the terms of the agreement was sent by facsimile to HIC's office in Virginia. Yet, even assuming, *arguendo*, the contract was made in Virginia, this, too, does not end the choice-of-law analysis because there is an exception under Virginia law to the general rule that a contract is governed by the law of the place where made. Specifically, settled Virginia law holds that

---

[4] Virginia's "borrowing statute" provides as follows:

> No action shall be maintained on any contract which is governed by the law of another state or country if the right of action thereon is barred either by the laws of such state or country or of this Commonwealth.

Va. Code § 8.01-247 (West 2010).

where, as here, a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract. *See Erie Ins. Exch. v. Shapiro*, 450 S.E.2d 144, 145 (Va. 1994) ("It is a general rule that every contract as to its validity, nature, interpretation and effect . . . is governed by the law of the place where it is made, unless it is to be performed in another place." (quoting *The Freeman's Bank v. Ruckman*, 57 Va. (16 Gratt.) 126, 127 (1860))).[5] Here, the record reflects that the contract at issue, which required HIC to repair the insured property, was performed in the District of Columbia, the insured property's location. And, because the limitations period for a written contract is only three years in the District of Columbia,[6] Virginia's borrowing statute dictates that the District of Columbia's three-year statute of limitations applies in this action.[7]

Under District of Columbia law, there is no doubt that HIC's breach of contract claim is barred by the three-year statute of limitations. Well-settled District of Columbia law holds that "[a] cause of action accrues, and the statute of limitations beings to run, at the time of the

---

[5] *See also Boginis v. Marriot Ownership Resorts, Inc.*, No. 94-1843, 57 F.3d 1065, at *6 (4th Cir. June 8, 1995) ("[I]f the contract is made in one state but is to be performed in a different state, the governing law is the place of performance."); *Sneed v. Am. Bank Stationary Co.*, 764 F. Supp. 65, 67 (E.D. Va. 1991) ("[I]n cases in which a contract is made in one state, but is to be performed in another, the law of the place of performance governs.") *Black v. Powers*, 628 S.E.2d 546, 554 (Va. Ct. App. 2006) ("If the parties merely sign the contract in one jurisdiction, but, at the time of execution, the parties intend for the contract to be fully performed in another, specific jurisdiction, the law of the place of performance (the *lex loci solutionis*) will be applied rather than the law of the place where the contract was formally executed." (citing *Arkla Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. 1926) & *Poole v. Perkins*, 101 S.E. 240, 242 (Va. 1919))).

[6] *See* D.C. Code § 12-301(7) (West 2010).

[7] Virginia's borrowing statute requires application of not only the District of Columbia's three-year statute of limitations, but also District of Columbia law on accrual and tolling. *See Hansen*, 585 S.E.2d at 572 (applying Maryland's law on accrual); *see also Eastport Ventures, Ltd. v. Kariman*, No. 1:06cv1177, 2007 WL 783028, at *3 (E.D. Va. Mar. 13, 2007) (deferring statute-of-limitations issue until applicable rules of tolling under Ukrainian law were determined).

- 8 -

breach." *Eastbanc, Inc. v. Georgetown Park Assocs. II, LP*, 940 A.2d 996, 1004 (D.C. 2008) (quoting 1 Calvin W. Corman, *Limitation of Actions* § 7.2.1, at 8412 (1991)). A contract is breached, moreover, "if a party fails to perform when performance is due." *Id.* (citing 9 Arthur L. Corbin, *Corbin on Contracts* § 943 (interim ed. 2002)). Here, the parties dispute when the contract required Travelers to pay HIC for its repair work. Travelers argues that it was legally obligated to pay HIC upon receipt of HIC's final statement of costs in September 2004. HIC counters that the contract does not specifically identify a payment date, and thus, the breach-of-contract claim did not accrue until HIC discovered that Travelers would not pay the full amount owed under the contract. According to HIC, this discovery did not occur until July 16, 2008, when HIC received Travelers's letter stating that it would not pay HIC any additional amounts for the repair work.

Under D.C. law, "[a]s a general rule, an actionable claim accrues, and the statute of limitations begins to run, when a suit thereon could first be maintained to a successful conclusion." *Bembery v. District of Columbia*, 758 A.2d 518, 520 (D.C. 2000). In this case, the complaint alleges that HIC submitted a final statement of costs in September 2004, and again in December 2004. The evidence in the record does not identify the exact date the repairs were completed, but HIC alleges that it completed the repairs within one year of accepting the contract on December 12, 2003. Thus, by December 2004, HIC had repaired the insured property, and it had submitted its final statement of costs on two occasions. At that point, there is no doubt that HIC could have maintained a suit against Travelers for breach of contract, arising from Travelers's failure to pay for the repair work. *See id.* (holding that plaintiff had a right to sue the District of Columbia for breach of a lease agreement once plaintiff had submitted its bills for extra rent). Accordingly, HIC's breach-of-contract action is barred by the statute of limitations

because the limitations period expired, at the latest, in December 2007, and HIC did not initiate this action until June 2010.

HIC's argument that its claim did not accrue until it received Travelers's July 16, 2008 letter stating that it did not intend to pay the final amount owed is both legally and factually incorrect. It is legally incorrect because a claim for breach of contract accrues under D.C. law at the time of the breach, and not when the promisee receives notice that the promisor does not intend to pay. *See id.* (rejecting plaintiff's argument that the claim for breach of contract did not accrue until it received a letter from the District of Columbia stating that it did not intend to pay the bills for extra rent). And while D.C. uses the "discovery rule"[8] in cases involving latent injuries, the rule has no application in this case because the failure to receive funds owed pursuant to a contract is not a latent injury. To the contrary, the alleged injury manifests itself at the time of the breach. *See Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456 (D.C. Cir. 1989) (rejecting application of discovery rule where injury was not latent).

HIC's argument is factually incorrect because the evidence in the record clearly shows that HIC was aware that Travelers did not intend to pay the full amount of HIC's final bill in June 2005. Specifically, Hunter attached a declaration to the complaint filed in his case in the District of Columbia in which he stated:

> The first time I was made aware that Stephen Brady ("Brady") and Travelers would not make payment to HIC pursuant to the terms of the express contract was, as stated, 7-10 days before June 22, 2005, when Brady sent me a copy of his April 18, 2005 letter.

---

[8] Pursuant to the discovery rule, "a particular cause of action accrues 'when the plaintiff knows or through the exercise of due diligence should have known of the injury.'" *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (quoting *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979)).

- 10 -

Thus, even if the discovery rule were applicable in this case, HIC's cause of action would have accrued in June 2005, and the claim would still be barred because the instant suit was not filed until well after June 2008, the expiration of D.C.'s three-year statute of limitations.

Moreover, HIC's claim does not survive on the ground that Travelers is estopped from asserting the statute of limitations as a defense. In the District of Columbia, "[a] defendant is estopped from raising the statute of limitations as a defense if that defendant has 'done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him.'" *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998) (quoting *Property 10-F, Inc. v. Pack & Process, Inc.*, 26 A.2d 290, 291 (D.C. 1970)). Importantly, "[t]he effect of such an estoppel is not necessarily to toll the running of the statute." *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987). Under well-settled D.C. law, "[i]f ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute." *Property 10-F, Inc.*, 26 A.2d at 291.

Here, HIC alleges that Travelers made multiple representations that had the effect of lulling it into inaction. First, HIC alleges that from the time it entered into the contract, on December 12, 2003, until the time it received the purported "final check" from Travelers in June 2005, Brady repeatedly told Hunter: "we're a responsible company, you're going to be paid." Even assuming that a jury concluded that these representations lulled HIC into not filing suit between December 2004 and June 2005, the statute of limitations would still bar HIC's claim. The lulling effect of the representations ended when Travelers issued a "final check" in 2005 and the amount of the check was less than the total amount requested in HIC's final statement. At that point, HIC knew or should have known that the parties disputed the total cost of repairing

the insured property. And, because the lulling period ceased in June 2005, there was ample time thereafter for HIC to file suit for breach of contract within the limitations period, which did not expire until December 2007. *See Property 10-F, Inc.*, 26 A.2d at 291 (holding that defendant could assert a statute of limitations defense where plaintiff still had over two years to file suit after the lulling activity ceased).

HIC's claim that the "lulling" activity continued past June 2005 is unpersuasive. In his sworn declaration, which is undisputed by Travelers, Hunter states that after he received the "final check" in June 2005, Brady told him that if HIC "could provide additional information or documentation to [Brady] or Shilling, it would be taken under consideration at that time." In addition, Hunter states that from June 2005 until July 16, 2008, he called Travelers on numerous occasions to inquire about the final payment. During each phone call, Travelers told Hunter that "the file did not reflect HIC's justification as to documentation for time and material," and Travelers requested that Hunter submit "written justification." Hunter states that he sent the "written justification" on multiple occasions, but each time he called to follow-up, the process simply repeated itself; he was told the record did not justify additional payment and that he needed to submit written documentation justifying his claim.

These representations do not establish a claim for equitable estoppel that survives summary judgment because no reasonable juror could conclude that the representations were capable of lulling HIC into not filing suit. Travelers never promised to pay HIC the disputed amount if HIC provided additional documentation, nor did Travelers agree to negotiate a good faith settlement of the disputed amount. *See Bailey v. Greenberg*, 516 A.2d 934, 940 (D.C. 1986) (denying summary judgment where insurance company represented that claim would be processed and payment would be made). To the contrary, Travelers simply represented that it

might reconsider its position regarding the total cost of making the repairs if HIC provided written documentation justifying higher costs, and it repeatedly told HIC that its written justification was insufficient. No reasonable person could conclude that these representations lulled HIC into not filing suit. If anything, Travelers's representations should have placed HIC on notice that filing suit was the only way to recover the disputed amount.

Finally, HIC's breach-of-contract claim is not saved by a "savings statute." HIC argues that its claim is not barred by the statute of limitations because the Virginia savings statute provides additional time to file its claim. The Virginia savings statute provides as follows:

> [I]f any action is commenced within the prescribed limitation period and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.

Va. Code § 8.01-229(E)(1). According to HIC, it had five years to file its claim, and because the savings statute operated to toll the statute of limitations during the pendency of its earlier action in the District of Columbia, the limitations period did not expire until September 2010, at the earliest. But HIC's argument that the Virginia savings statute operates to save its claim is predicated on the mistaken position that Virginia's statute of limitations governs the instant action. Because the borrowing statute applies in this case, D.C. law governs the statute-of-limitations issue, and the District of Columbia is one of the minority jurisdictions that does not have a savings statute that tolls the statute of limitations under circumstances similar to those provided in Virginia's statute. *See East v. Graphic Arts Indus. Joint Pension*, 718 A.2d 153, 156 (D.C. 1998).

## IV.

Accordingly, plaintiff's breach-of-contract claim is barred by the District of Columbia's three-year statute of limitations governing contract claims.[9]

An appropriate Order will issue.

Alexandria, Virginia
November 19, 2010

/s/ T. S. Ellis, III
T. S. Ellis, III
United States District Judge

---

[9] It is worth noting that HIC's breach-of-contract claim would be barred even assuming the agreement between HIC and Travelers is construed as an oral contract. See Laios v. Waysylik, 564 F. Supp. 2d 538, 541-42 (E.D. Va. 2008); Digital Support Corp. v. Avery, 49 Va. Cir. 324, 1999 WL 796745, at *2 (Va. Cir. Ct. July 13, 1999). Virginia law has a three-year statute of limitations for oral contracts. See Va. Code Ann. § 8.01-246(4). Under Virginia law, the breach-of-contract claim accrued in December 2004 because HIC had completed performance and submitted its final statement of costs. See Clifton D. Mayhew, Inc. v. Blake Constr. Co., Inc., 482 F.2d 1260, 1263 (4th Cir. 1973) (holding that "[i]n Virginia, the statute of limitations on a contract begins to run from the time payment is due"). Thus, a claim for breach of an oral contract would be time barred because it was filed well after the three-year limitations period expired in December 2007. In addition, HIC's claim would not be saved by the doctrine of equitable estoppel because no reasonable juror could conclude that HIC reasonably relied on Travelers's representations in deciding not to file suit within the limitations period. See Barry v. Donnelly, 781 F.2d 1040, 1042 (4th Cir. 1986) (denying summary judgment where plaintiff alleged that defendant promised to return a painting); City of Bedford v. James Leffel & Co., 558 F.2d 216, 219 (4th Cir. 1977) (denying summary judgment where defendant made representations implying that machinery would eventually be fixed). Finally, the Virginia savings statute—Va. Code § 8.01-229(E)(1)—does not save HIC's claim. For the Virginia savings statute to apply, a plaintiff's first action must be filed within Virginia's prescribed limitations period. In this case, HIC's first lawsuit was not filed in the District of Columbia until April 2008, months after the expiration of Virginia's three-year limitations period.